UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THERESE PATRICIA OKOUMOU,

        Plaintiff,

   -v-                                     1:15-CV-862

MENTAL HEALTH ASSOCIATION OF
COLUMBIA-GREENE COUNTIES, INC.,
TRISH CUZDEY, and JULIANNE
BAUMANN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

THERESE PATRICIA OKOUMOU
Plaintiff, Pro Se
299 Saint Marks Place
Apartment #104
Staten Island, NY 10301

DOWLING LAW, PLLC                     JOANMARIE DOWLING, ESQ.
Attorneys for Defendants
31 Freeman Road
Albany, NY 12208

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     On July 10, 2015, plaintiff Therese Patricia Okoumou ("Okoumou" or "plaintiff"), proceeding pro se, filed this action against her former employer, the Mental Health Association of Columbia-Greene Counties, Inc. (the "MHA"), Julianne Baumann ("Baumann"), and Trish Cuzdey ("Cuzdey") seeking to recover damages for alleged

violations of Title VII of the Civil Rights Act of 1964 ("Title VII").

The MHA, Baumann, and Cuzdey (collectively "defendants") have moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking dismissal of Okoumou's complaint. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

On September 23, 2013, the REACH Center (the "Center"), an agency administered by the MHA, hired Okoumou, an African-American woman in her early forties, as a Counselor.

Shortly after being hired, Okoumou spoke with Baumann, the Center's "program director and counselor," about taking classes at a local community college. Although plaintiff had already completed a Bachelor's degree in Human Services, plaintiff's work schedule at the Center "had been flexible" and, because there were times she had worked early mornings, evenings, or weekends, she had accrued some compensation time "to go against [her] daily daytime schedule." Accordingly, plaintiff believed she had the flexibility to pursue additional educational opportunities.

Although the timing is unclear, Okoumou's relationship with Baumann deteriorated soon after this conversation about additional schooling. According to plaintiff:

> Ms. Baumann often would express anti-African racial undertone[s] towards me. The initial impact of her offensive behavior was alienation each time she made fun of my accent to put me down - she would mimic tribal dialect and yell "Speak English!".

---

[1] The following factual allegations are taken from Okoumou's operative complaint, or from documents integral to it, and will be assumed true for purposes of resolving defendants' motion to dismiss. See, e.g., Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 508 n. 2 (S.D.N.Y. 2010).

> She[ ] would also repeat my words to amuse herself.  She caused confusion and . . . used vulgar language to describe what she said was her opinion of "third-world countries" such as The Republic of Congo.  [She also said] "Africa is a shitty place to live, I wouldn't send my daughter to live there, not even for a week!" . . . . Ms. Baumann had also told me how fortunate I should feel to work at a desk since[ ] "there are no jobs where you come from."  Another time, she made a remark about my legs by saying that the reason I was strong was because "you people walk all the time and ride the bicycle."  She was assuming that we don't have cars in my country.

Beyond these remarks, Okoumou also alleges Baumann relayed biased and false information to Cuzdey, the Human Resources Director of the Center, about the quality of plaintiff's work.

On January 14, 2014, Baumann and Cuzdey called an "unexpected formal meeting" with Okoumou regarding her job performance.  According to plaintiff, Cuzdey presented her with a written "performance appraisal" filled with "fabrications" that "twisted" the facts about plaintiff's intent to take college classes.  As plaintiff explains, she expressed a willingness to give up on the classes if the Center could not accommodate her school schedule.

Nevertheless, on January 17, 2014, Okoumou requested permission to visit the local community college on the upcoming first day of classes to "see if [she] could adjust [her] schedule to enable [her] to continue working."  It is unclear from plaintiff's complaint whether she ever received this permission, but four days later, on January 21, plaintiff claims she traveled to the school to investigate her class scheduling options.  When she returned to work that afternoon, Baumann met with plaintiff and promptly fired her.

Following her termination from the Center, Okoumou applied for public assistance from the Greene County Department of Social Services ("DSS").  According to plaintiff, Cuzdey made false statements to the DSS that "painted a picture of someone who chose to

quit her job to collect public benefits," which caused DSS to deny her claim.  Plaintiff further alleges Cuzdey made the same false statements to the Department of Labor ("DOL"), which likewise resulted in plaintiff being denied unemployment benefits.

On March 16, 2015, Okoumou filed a charge with the Equal Employment Opportunity Commission ("EEOC").  By letter dated April 29, 2015, the EEOC concluded plaintiff's charge had not been timely filed and therefore issued a "dismissal and notice of rights."  This lawsuit followed.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where the plaintiff has failed to provide some basis for the allegations that support the elements of her claims.  See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002).

In the employment discrimination context, a plaintiff faced with a motion to dismiss is not required to prove discrimination or even allege facts establishing every element of a

so-called prima facie case, but rather "need only give plausible support to a minimal inference of discriminatory motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)); see also Edner v. NYCTA-MTA, –F. Supp. 3d–, 2015 WL 5561027, at *4 (E.D.N.Y. Sept. 18, 2015) (collecting cases).

"At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87.

Finally, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

## IV. DISCUSSION

Okoumou's complaint alleges unlawful discrimination in violation of Title VII. According to plaintiff, defendants harassed her and ultimately terminated her employment at the Center, using plaintiff's attempted enrollment at the local community college as a pretext for this unlawful discrimination.  Further, plaintiff alleges Baumann and Cuzdey engaged in retaliatory behavior by continuing to "harass and discriminate against [her] long after [her] employment was terminated."  Finally, plaintiff alleges Cuzdey's false statements to DSS and the DOL amounted to "libel, slander, and defamation of character."

### A. Individual Liability

First, Okoumou's Title VII claims directed at Baumann and Cuzdey, individual

defendants to this action, must be dismissed. Title VII does not provide for individual liability. See, e.g., Jackson v. Battaglia, 63 F. Supp. 3d 214, 219 (N.D.N.Y. 2015) ("[I]nsofar as [plaintiff's] Title VII . . . claims are directed at Battaglia, plaintiff's former direct supervisor . . ., they cannot be maintained because individuals are not subject to liability under either Title VII or the ADA."); Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 354-55 (E.D.N.Y. 2013) (noting Second Circuit has determined Title VII does not provide for individual liability and collecting cases); see also Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) ("[D]ismissal of the Title VII . . . claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."). Accordingly, plaintiff's Title VII claims against Baumann and Cuzdey must be dismissed.

### B. Timeliness

Second, Okoumou's Title VII claims related to certain misconduct that allegedly occurred at the Center before her termination, as well as the termination itself that occurred on January 21, 2014, are time-barred by Title VII's 300-day limitations period.

"For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the [EEOC] within 300 days of the allegedly unlawful employment [action]." Baroor v. N.Y.C. Dep't of Educ., 362 F. App'x 157, 159 (2d Cir. 2010) (summary order) (citing 42 U.S.C. § 2000e-5(e); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)).

In this case, Okoumou filed her EEOC charge on March 16, 2015, a full 419 days after her January 21, 2014 termination. Therefore, plaintiff's EEOC charge would be untimely as to any claims arising from her time at the Center, which would have occurred prior to January 21, as well as any claims arising from the termination itself, since it occurred on that date.

However, Okoumou's allegations must be further analyzed in light of the possible applicability of an important exception to this 300-day rule. Known as the "continuing violation doctrine," it permits a plaintiff who files an EEOC charge that alleges at least one incident of discrimination that occurred within the 300-day period to have <u>all</u> of their allegations considered timely. See, e.g., <u>Chin v. Port Auth. of N.Y. & N.J.</u>, 685 F.3d 135, 155-56 (2d Cir. 2012).

Importantly, though, this doctrine does not apply to "discrete acts" of discrimination, such as termination, disparate discipline, or negative performance evaluations. <u>Edner</u>, 2015 WL 5561027, at *5; <u>see also</u> <u>Chin</u>, 685 F.3d at 157 (noting that where discrete acts "fall outside the limitations period, [they] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period").

Here, Okoumou's complaint focuses on a series of derogatory remarks emanating from Baumann, a meeting with Human Resources that resulted in an unfairly negative performance evaluation, and an unlawful termination. These latter two allegations—the unfair evaluation as well as the unlawful termination—are precisely the kind of "discrete acts" that are time-barred if not complained of within 300 days. <u>Edner</u>, 2015 WL 5561027, at *6 ("Plaintiff's termination . . . [is] also [a] discrete act[ ] that [is] not entitled to the continuing violation exception . . . . [t]o the extent Plaintiff relies on Defendant's various reprimands or negative performance reviews, these are also discrete acts . . . .").

With regard to Baumann's comments, those remarks represent an alleged series of statements related to Okoumou's race, ethnicity, and/or national origin that, as far as can be discerned from a careful review of plaintiff's submissions, ceased as of her January 21, 2014

termination. Crucially here, the alleged interference with plaintiff's DSS and DOL claims that occurred subsequent to her termination came as a result of falsehoods uttered by Cuzdey, not Baumann, and, unlike Baumann's comments regarding plaintiff's race, ethnicity, and/or national origin, these latter statements only "painted a picture of someone who chose to quit her job to collect public benefits."

In other words, while Baumann's allegedly improper statements were related to Okoumou's race and national origin, protected classes under Title VII, Cuzdey's alleged falsehoods consist of lies about plaintiff quitting the Center, rather than being fired, which caused or contributed to DSS and the DOL's decision to deny plaintiff's benefits claims.

These later comments by Cuzdey, even assuming they were somehow improper, are unrelated to the substance of Baumann's statements and are therefore not eligible for treatment as a continuing violation.[2] Cf. Edner, 2015 WL 5561027, at *6 ("Plaintiff alleges no facts suggesting that these acts were in furtherance of a discriminatory policy or practice of discriminating against Haitian employees or that they occurred within the 300-day period . . . .").

Nor is the second relevant exception, known as the doctrine of equitable tolling, applicable here. Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising [her] rights." Zerilli Edelglass v. N.Y. Transit Auth., 333 F.3d 74, 80 (2d. Cir 2003). "Exceptional circumstances that might warrant equitable tolling include where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." Id. (citation and internal

---

[2] As plaintiff's opposition memorandum clarifies, Baumann was not even involved in the DSS hearing at which Cuzdey made the allegedly false, unrelated statements.

quotation marks omitted).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli Edelglass, 333 F.3d at 80-81 (citation and internal quotation marks omitted).

In this case, Okoumou claims equitable tolling should apply because she "had no money and no means of transportation to survive the harsh winter in Upstate New York." Unfortunately, however, a plaintiff's poor financial situation is insufficient to justify application of the doctrine. See, e.g., Wen Liu v. Mount Sinai Sch. of Med., 2012 WL 4561003, at *5 (S.D.N.Y. Sept. 24, 2012) ("Plaintiff[']s difficult financial situation and inability to afford a lawyer do not entitle her to have the limitations period equitably tolled . . . ."); Apionishev v. Columbia Univ., 2011 WL 1197637, at *6 (S.D.N.Y. Mar. 25, 2011) (finding tolling inappropriate because "[h]omelessness and depression or illness alone are not sufficient to justify equitable tolling").

Accordingly, because the continuing violation doctrine does not apply and Okoumou's claims cannot be equitably tolled, plaintiff's discrimination claims are time-barred and must be dismissed.

### C. Retaliation

As noted above, Okoumou's complaint also alleges that Baumann and Cuzdey engaged in retaliatory behavior by continuing to "harass and discriminate against [her] long after [her] employment was terminated." Liberally construed, it appears plaintiff has attempted to state a retaliation claim arising from the statements Cuzdey made to DSS and

the DOL subsequent to plaintiff's January 21, 2014 termination from the Center.

"Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee who: (1) has opposed an unlawful employment practice, or (2) has participated in any manner in an investigation under Title VII." Harder, 117 F. Supp. 3d at 166 (citation and internal quotation marks omitted). "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90 (citation omitted).

Notably, "several courts in this Circuit and others have found that an employer's opposition to unemployment insurance benefits may qualify as an adverse action." Holleman v. Art Crating Inc., 2014 WL 4907732, at *48-*49 (E.D.N.Y. Sept. 30, 2014) (collecting cases). However, a plaintiff is still required to "plausibly plead a connection between the [adverse] act and [her] engagement in [some manner of] protected activity." Vega, 801 F.3d at 90.[3]

Here, the problem for Okoumou is that she has not alleged that she engaged in any protected activity that could plausibly be connected to the adverse actions taken against her, such as Cuzdey's false statements to DSS or the DOL.[4] According to plaintiff, the DSS hearing occurred on July 15, 2014, and the DOL proceeding occurred on October 1, 2014.

---

[3] In fact, this connection can even be "shown indirectly by timing"; that is, the protected activity was "followed closely in time by adverse employment action." Vega, 801 F.3d at 90.

[4] Plaintiff's complaint does not provide sufficient factual allegations to clarify the exact timeline at issue in this case, which is often important in Title VII claims. However, plaintiff clarified the dates in her opposition to defendants' motion. Out of solicitude to plaintiff, those dates are included here.

But even accepting that timeline, it would mean Cuzdey's allegedly false statements during those proceedings occurred *before* plaintiff filed her EEOC complaint on March 16, 2015. Therefore, her EEOC complaint cannot serve as the "protected activity" for which plaintiff's former employer, or its representatives, sought to retaliate by making false statements to DSS or the DOL.[5]

      Equally problematic, there is no indication that Okoumou ever reported, formally or informally, any of Baumann's allegedly improper remarks to the Center, Cuzdey, or anyone else at the MHA. If this were the case, a tenuous claim could at least be made at this stage of the proceedings that Cuzdey's opposition to plaintiff's DSS and DOL benefits claims was causally related to plaintiff's earlier "charge" of workplace discrimination. Krasner, 680 F. Supp. 2d at 520 ("The law protects employees [who] . . . make[ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.").

      Instead, according to Okoumou, Cuzdey's false statements merely "painted a picture of someone who chose to quit her job to collect public benefits," which caused DSS and the DOL to deny plaintiff's claims. In other words, it appears plaintiff is asserting that defendants were "retaliating" for plaintiff's prior request, during the time she was employed at the Center, to try to work out a schedule that would allow her to attend classes at the local community

---

[5] Even if the temporality were reversed, the mere fact that defendants opposed plaintiff's "claim for unemployment compensation benefits after [s]he filed a discrimination complaint, with nothing more, is insufficient to establish the requisite causal link" between the complaint and the opposition. Petrunich v. Sun Bldg. Sys., Inc., 2006 WL 2788208, at *8 (M.D. Pa. Sept. 26, 2006); see also Holleman, 2014 WL 4907732, at *50 ("In this case, no inference of retaliatory animus could be drawn from temporal proximity alone because Plaintiff does not claim that anything about Defendants' opposition-other than the fact that Defendants' asserted an opposition-was retaliatory.").

college.

Even assuming this connection exists, Okoumou's school-related request cannot plausibly be considered the kind of "protected activity" covered by Title VII's anti-retaliation provision. See Vega, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee . . . because [s]he engaged in protected activity—*complaining about or otherwise opposing discrimination.*" (emphasis added)).  Accordingly, plaintiff has failed to state a claim for retaliation.

### D. State Law Claims

Okoumou's complaint, exhibits, and opposition paperwork focus on Title VII. However, it is noted that plaintiff also alleges Cuzdey "engaged in libel, slander, and/or defamation of character when she asserted that [plaintiff] chose school over her career."

To the extent these allegations can be construed as raising state law claims, the exercise of supplemental jurisdiction over those (or any other state law claims that may be inferred from plaintiff's complaint) will be declined. See 28 U.S.C. § 1367(c)(3). Accordingly, plaintiff will be free to pursue remedies for those alleged wrongs in the state courts.

## V. CONCLUSION

Okoumou's Title VII discrimination claims are time-barred, and defendants' mere opposition to her claims for benefits, absent far different allegations than those plaintiff has presented here, is not sufficient to state a claim for retaliation.

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss is GRANTED;

2. Plaintiff's complaint is DISMISSED;

3. Plaintiff's Title VII claims are DISMISSED with prejudice;[6] and

4. Plaintiff's state law claims are DISMISSED without prejudice.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 30, 2016
       Utica, New York.

---

[6] While a court generally permits a pro se litigant an opportunity to amend at least once "when a liberal reading of the complaint gives an[ ] indication that a valid claim might be stated," Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999), the problems with Okoumou's federal causes of action are substantive and therefore, because repleading would be futile, granting leave to do so is unnecessary here.  See Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998).